# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                         **Case No. 06-CR-221**

**RICKY REID**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Ricky Reid pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g), and maintaining a drug trafficking place, contrary to 21 U.S.C. § 856(a)(1). The probation office prepared a pre-sentence report ("PSR"), which set defendant's offense level at 31 and his criminal history category at III, producing an imprisonment range of 135-168 months under the advisory sentencing guidelines.[1]

Neither side objected to the PSR, but defendant requested a non-guideline sentence of five years to run concurrent with the state sentence after revocation he was then serving, while the government advocated a sentence within the range running consecutively. In this memorandum, I provide written reasons for the sentence imposed.

---

[1] On the firearm count, defendant's base offense level was 14, U.S.S.G. § 2K2.1(a)(6), plus 4 because he used the firearm in connection with another felony offense, to wit drug trafficking, § 2K2.1(b)(6). On the drug count, defendant's base level was 32, U.S.S.G. § 2D1.1(c)(4), plus 2 because he possessed a firearm in connection with the offense, § 2D1.1(b)(1). The PSR grouped the two counts under § 3D1.2(c), then subtracted 3 for acceptance of responsibility, § 3E1.1, producing a final offense level of 31. Defendant's criminal history score was 5, 3 points for a felon in possession and cocaine possession case, for which he was sentenced to 18 months in jail following the revocation of his probation, U.S.S.G. §§ 4A1.1(a) & 4A1.2(k), and 2 points because he committed the instant offense while on probation, § 4A1.1(d), creating a criminal history category of III.

## I. SENTENCING FACTORS

In imposing sentence, I consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the statute directs me to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2).

## II. DISCUSSION

**A.    Nature of Offense**

Defendant operated a drug house, out of which he sold crack cocaine, for about a year. The parties estimated a drug weight of 50 to 150 grams of crack under U.S.S.G. § 2D1.1(c).

The government developed six cooperating informants regarding defendant's drug activities, including two of his sources. The informants indicated that defendant carried a pistol, and that he stored cocaine and cocaine base in so-called "California safes" shaped like peanut butter jars and Pringles cans. When the police searched defendant's house following his arrest on August 16, 2006, they found California safes containing cash and the odor of cocaine. They also found other accouterments of the drug trade, including mixing and packaging materials, as well as ammunition and a loaded handgun. The officers located the handgun inside a sock in a vent near the door. As a convicted felon, defendant was prohibited from possessing firearms.

**B.     Defendant's Character and Background**

Defendant was twenty-four years old and on supervision for a drug and weapons offense when he was arrested for the instant offense. In fact, it was only on July 26, 2006, about three weeks before his arrest in this case, that a state court judge placed defendant on probation for felon in possession of a firearm and cocaine possession. That case arose out of a traffic stop, pursuant to which officers found a loaded semi-automatic handgun and 2.9 grams of cocaine, including the packaging. Defendant's probation was revoked based on the instant offense, and he was sentenced to 18 months in jail, which sentence he was serving when he came before me. Defendant also had a juvenile adjudication for first degree sexual assault of a child, which was too old to score criminal history points. Defendant was just twelve years old at the time he committed that offense, a year older than the victim.

The parties debated the extent to which defendant's difficult upbringing played a role in his conduct, but defendant told the PSR writer that he had a "good" childhood, despite the fact that his father died when he was young. He graduated from high school, which was to his

3

credit, but had a rather limited employment history. He admitted supporting himself in recent years by dealing.

There were some positives in defendant's character. Prior to his arrest, defendant was living with his mother, and she indicated that he helped her after she suffered a stroke in the summer of 2006, which prevented her from working. In a letter to the court, she further stated that defendant was a good uncle, brother and son. I also received a letter from defendant's cousin indicating that he was a caring and loyal person. Several family members appeared in support at sentencing.

Defendant was not married and had no children. Although he had experimented with illegal drugs, he did not appear to have significant substance abuse issues. His health, physical and mental, was good, and based on my observations of him, I believed that defendant had some potential, given the proper direction.

**C.    Purposes of Sentencing**

Given his inability to stay out of trouble, even when given the opportunity for probation, I considered defendant a risk of recidivism. I also saw a need for a substantial period of confinement to reflect the seriousness of the offense. It did not appear that defendant had significant rehabilitative needs, although I believed he would benefit from vocational training so that he could support himself in a lawful manner, as well as some drug treatment and education. I made appropriate recommendations to the Bureau of Prisons ("BOP") on both issues.

**D.    Guidelines**

The guidelines called for a term of 135-168 months. The offense level in this case was

4

largely the product of the drug weight, which in turn was elevated because the substance involved was crack cocaine. Defendant asked for a below-guideline sentence based primarily on the guidelines' treatment of 1 gram of crack the same as 100 grams of powder cocaine. See United States v. Smith, 359 F. Supp. 2d 771, 777-82 (E.D. Wis. 2005) (discussing the 100:1 crack/powder disparity). Although the Seventh Circuit has held that district courts cannot create their own alternate ratio, the crack guideline is no more binding than any other after Booker. Further, district courts can consider the Sentencing Commission's criticisms of the 100:1 ratio insofar as they bear upon an individual defendant's case. See United States v. Jointer, 457 F.3d 682, 687-88 (7th Cir. 2006); see also United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007); United States v. Gunter, 462 F.3d 237 (3d Cir. 2006).

In the present case, while defendant noted some of the general problems with the ratio, he did not convincingly relate them to his case. To be sure, his range would have been lower had the substance involved been powder cocaine, but that is true in all crack cases. In this case, based on the items found in his house, it appeared that defendant sometimes cooked the crack himself. However, one of the informants stated that defendant's supplier cooked it for defendant at times. Another informant indicated that defendant traveled to Michigan to pick up cocaine. Thus, it was hard to characterize defendant as simply a retail dealer, who under the guidelines faced a much longer term than a wholesale powder distributor.

Defendant noted that the weight estimate in the PSR was based on the assertions of informants, while only trace amounts were found in his house during the search. However, defendant agreed to the estimate in the PSR. Further, he was dealing out of this house for over a year and, as the government stated, the drug weight in the PSR was likely conservative.

Defendant admitted that he possessed a gun, but claimed that it was not in a place

5

where it was intended to be an offensive weapon.  However, the gun was loaded, and its location near the door suggested to me that it was there to, at least, protect defendant's cocaine business.  Further, several of the informants stated that defendant carried guns.

In determining whether to impose a sentence consistent with the crack guideline, I may consider whether the general factors motivating the guidelines' more harsh treatment of crack are present in the instant case.  I can also consider whether the Commission's criticisms of the guideline are applicable in the present case.  One of those criticisms is that the guideline results in much longer sentences for retail crack dealers than the wholesale drug distributors who supply them with the powder cocaine from which their crack is produced.  See Pickett, 475 F.3d at 1354.  As indicated, I did not see that as being a substantial concern in this case, given the description of defendant's dealing in the PSR and the length of time over which it occurred.

Second, the Commission has noted that § 2D1.1 treats all crack offenders as if they engaged in harmful conduct, while in many cases there is no evidence of such aggravating circumstances.  See Pickett, 475 F.3d at 1354.  In this case, defendant possessed a firearm to protect his cocaine, and several of the informants noted his propensity to carry firearms.  Thus, at least some aggravating factors were present here, although there was no evidence of actual violence or threats, of any specific adverse effects on the neighborhood containing defendant's drug house, or of any specific victims of his conduct.  Thus, the offense level slightly overstated the harmfulness of defendant's conduct, but not to the degree he suggested.

Defendant also suggested that his record was limited, but under the circumstances I found it of some concern.  As a juvenile, he was adjudicated for the forcible rape of an eleven year old girl.  That offense did occur many years ago, when defendant was a child himself, and he expressed remorse for it during his allocution.  As an adult, defendant was convicted of

6

felon in possession of a firearm and possession of cocaine, for which he was placed on probation. As noted, just three weeks later he was arrested in this case, squandering the chance he had been given. Thus, while defendant argued that category III overstated the severity of his criminal history, see U.S.S.G. § 4A1.3(b), I did not really agree. It was true that all 5 of defendant's criminal points stemmed from the same case, but the Commission has determined that additional points should be assessed when the defendant commits the instant offense while on supervision. See U.S.S.G. § 4A1.1(d). Under the facts of this case, where defendant returned to crime within weeks of receiving what seemed a pretty lenient sentence in state court, assessing additional points made some sense.

Therefore, given the serious nature of the crime and defendant's record, the five year sentence he recommended was insufficient. However, I did think the guidelines' recommendation a bit greater than necessary. Prior to the revocation sentence he was then serving, defendant had never been to prison before. Thus, I did not believe that a sentence of greater than eleven years was necessary to deter him from future criminality. Consistent with the parsimony provision of § 3553(a), prison sentences should generally be imposed incrementally to achieve a deterrent effect. No doubt, defendant should have taken advantage of the chance he was given when the state court judge placed him on probation, but he did not. Therefore, I had to impose a substantial period of confinement to promote respect for the law and deter him from future violations. However, eleven plus years was greater than necessary to satisfy these purposes. See 18 U.S.C. § 3553(a)(2)(A) & (B).

Further, although the offense was serious, there was no evidence that defendant ever engaged in any actual violence or threats, or made any use of his firearm to further his drug trafficking. Nor was there evidence of specific, harmful effects on the neighborhood or on any

7

specific victims. Thus, the guideline term was slightly greater than necessary to reflect the seriousness of the offense. See 18 U.S.C. § 3553(a)(2)(A).

Finally, there were some positives in defendant's character as reflected in the comments and letters from his mother and cousin. His willingness to care for his mother was a good sign. The support of his family would assist in his re-integration into the community after he completed his sentence and reduce the likelihood of recidivism. See 18 U.S.C. § 3553(a)(2)(C). As noted, defendant was a high school graduate and had compiled some work history. Hopefully, with the vocational training I recommended to the BOP, he will be a productive member of society upon his release.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 108 months sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence varied by only about 2 levels from the guidelines and was based on the particular circumstances discussed above. Therefore, it did not create unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

The guidelines recommended that I run the instant sentence consecutively to defendant's undischarged state sentence after revocation. See U.S.S.G. § 5G1.3 cmt. n.3(C). However, for many of the same reasons stated above, running this sentence consecutively would have resulted in a total term that was greater than necessary. See 18 U.S.C. § 3584(b) (directing the court, in deciding whether to run a sentence concurrently, to consider the § 3553(a) factors). Further, defendant had, by the time I sentenced him, already served about half of the 18 month state sentence, and the instant sentence was much longer than the balance on the state term. Thus, there was an additional penalty based on the fact that defendant was on supervision when he committed the instant offense. In effect, given the

8

timing, the sentences would be partially concurrent and partially consecutive.[2]  Finally, the guidelines already took the state revocation sentence into account in defendant's criminal history in a substantial way – producing 3 points for the case itself[3] and 2 points because he was on supervision when he committed the instant offense – leading to his placement in criminal history category III.  To run the instant sentence consecutively on top of that would have placed greater weight on the state case, which did not appear to be aggravated (particularly given the state judge's initial decision to place defendant on probation), than it really could bear.  Therefore, I ordered the instant sentence to run concurrently with defendant's state term.

Upon release, I ordered defendant to serve a three year supervised release term, with a drug aftercare condition and other terms that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

[2]Under these circumstances, defendant's federal sentence commenced when it was imposed.  The BOP, which makes sentence credit determinations in the first instance, can implement my directive that the sentence be concurrent by designating the state facility as the place of federal confinement, see 18 U.S.C. §§ 3585(a) & 3621(b), but it cannot give any credit for time already credited on another sentence, § 3585(b), such as defendant's state revocation sentence.  See United States v. Walker, 98 F.3d 944, 945-46 (7th Cir. 1996).  Time "on loan" pursuant to a writ of habeas corpus ad prosequendum does not alter a defendant's custody status or affect sentence credit.  See Jake v. Herschberger, 173 F.3d 1059, 1062 n.1 (7th Cir. 1999).

[3]But for the revocation, the case would have scored 1 point.

9